[Civil No. 4005.   Filed May 23, 1938.]

[79 Pac. (2d) 515.]

E. L. O'MALLEY, as Special Administrator of the Estate of JAMES P. O'MALLEY, Deceased, and MARY R. O'MALLEY, Petitioners, v. HARRY M. MOORE, as State Treasurer of the State of Arizona, Respondent.

Mr. Wm. G. Christy, Mr. Hess Seaman and Mr. M. L. Ollerton, for Petitioners.

Mr. Joe Conway, Attorney General of Arizona, and Mr. J. M. Johnson, his Assistant, for Respondent.

LOCKWOOD, J. — This is a petition by E. L. O'Malley, as special administrator of the estate of

James P. O'Malley, deceased, and Mary R. O'Malley, hereinafter called plaintiffs, for a writ of *mandamus* against Harry M. Moore, state treasurer of the state of Arizona, hereinafter called defendant, requesting that defendant be ordered to pay to plaintiffs from the general fund of the state of Arizona the sum of $10,024.57. The case is an outgrowth of one heretofore decided by this court on the 17th day of January, 1938, numbered 3833, and entitled "E. L. O'Malley, as special administrator of the estate of James P. O'Malley, deceased, appellant, v. Mit Sims, Treasurer of the State of Arizona, appellee." Therein we held that the estate of James P. O'Malley, deceased, had paid to the state of Arizona an inheritance tax in the sum of $10,024.57, when no such tax was required by law, and remanded the case to the superior court of Maricopa county, with directions to proceed according to our holding. That court thereupon entered an order determining that no inheritance tax became due or payable to the state of Arizona from the estate of James P. O'Malley, deceased, and directed that the sum theretofore paid by the estate be refunded to the special administrator. Application was duly made to the defendant, and he stated that he was in doubt as to from what funds and in what manner the refund should be paid, and refused to make payment in accordance with the order of the superior court until a decision of this court on the question had been made. Thereafter this suit was brought.

There is no doubt that the state of Arizona is indebted to the plaintiffs in the sum set forth in their petition, and the sole question is how and from what fund the debt shall be paid. It is admitted by the pleadings that there is an ample amount in the general fund of the state to pay the indebtedness. The refund is governed by the provisions of section 3166, Revised Code of 1928, which reads as follows:

*"Refund; settlement when tax paid on estimate.* If a debt be proved against the estate of the decedent after the payment of any legacy or distributive share from which such tax has been deducted, or upon which it has been paid by the person entitled to such legacy or distributive share, and such person is required by the order of the court on notice to the state treasurer to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to such person by the executor, administrator, trustee, or officer to whom said tax has been paid. When a tax has been paid erroneously into the state treasury, the state treasurer, upon receiving a transcript from the court showing the facts, may refund *from the treasury* the amount of such erroneous or illegal payment to the person who paid such tax in error; or the state treasurer may order, direct and allow the treasurer of any county to refund the amount *out of the funds in his hands or custody to the credit of such taxes,* and credit him with the same in his next account. An application for such refunding of erroneous taxes must be made within one year from the payment thereof, or within one year after the reversal or modification of the order fixing such tax.

"Any person from whom such tax is or may be due may make an estimate of and pay the same to the county treasurer, at any time before the same is determined by the court, and shall thereupon be entitled to the discount and be relieved from any interest or penalty upon the amount so paid as if the tax were then determined. Any excess so paid shall be refunded to the person so paying or entitled thereto by such treasurer out of any inheritance tax money in his possession, or by the state treasurer when the county treasurer is without such money, upon filing with such treasurer a copy of the order fixing such tax and the amount of refund due." (Italics ours.)

█ It will be seen therefrom that a refund may be made either by the county treasurer or by the state treasurer. If it is made by the county treasurer, it can be made only from funds in his hands collected as inheritance taxes, but if it be made by the state treas-

urer the direction is that it be paid "from the treasury." We think the reason for this is plain. The county treasurer, in the collection of the tax, acts only as the agent for the state treasurer, for the entire proceeds of the tax goes to the state, no portion thereof being retained by the county. Such being the case, if the county treasurer has already paid to the state all of the inheritance tax money he has received, he cannot reasonably be required to repay the erroneous tax, for the only source from which it could be paid is the general fund of the county, and this fund has never been enriched by the proceeds of such tax. On the other hand, if the money has passed into the possession of the state treasurer, the general fund of the state has already been enriched thereby, and it is but just that it should repay the unjust enrichment.

We are of the opinion that it was the intention of the legislature, at the time of the adoption of section 3166, *supra,* that if any inheritance tax erroneously or unjustly paid had passed into the possession of the state treasurer, that it should be repaid from the general fund of the state. It is true that the Thirteenth Legislature, by chapter 27 of the Regular Session Laws of 1937, amended the inheritance tax law materially, but in such chapter it carefully provided that any proceedings pending at the time of its adoption should be regulated by whatever law was in force at that time. Since this suit was pending when chapter 27, *supra,* was adopted, it was governed by the provisions of section 3166, *supra.*

A peremptory writ will issue as prayed for.

McALISTER, C. J., and ROSS, J., concur.